UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| VALLEY HEALTH SYSTEM LLC, et al., <br><br>Plaintiff(s), <br><br>v. <br><br>AETNA HEALTH, INC., et al., <br><br>Defendant(s). | Case No. 2:15-CV-1457 JCM (NJK) <br><br>ORDER |

Presently before the court is defendants Aetna Health Management, LLC and Aetna Health, Inc.'s (together "Aetna") motion to dismiss. (ECF No. 26). Plaintiffs Valley Health System LLC, et al. (collectively "Valley Health") filed a response (ECF No. 28), and Aetna subsequently replied. (ECF No. 31).

**I.    Background**

Valley Health is comprised of various health care facilities operating in Nevada. (ECF No. 28 at 3). Aetna provides health insurance to its members and processes insurance claims for other payors. (*Id.*). Valley Health has provided medical services to patients who were either insured by Aetna or for whom Aetna processed claims on behalf of other payors.

From April 15, 2013, until April 14, 2014, Valley Health agreed to be one of Aetna's in-network providers pursuant to a written provider agreement ("the Aetna contract"). Valley Health agreed to accept reimbursement for services provided to Aetna members at a discounted rate from their total billed charges. (*Id.* at 3).

Upon termination of the contract in April of 2014, Aetna was permitted to use the discounted contract rates for no more than 60-days after the effective termination date—June 13, 2014. (*Id.* at 3–4). Since terminating the Aetna contract, the only other written agreements to which

**James C. Mahan**
**U.S. District Judge**

Aetna and Valley Health are both parties are "wrap network" agreements between Valley Health and a company called Beech Street. (*Id.* at 4). These agreements were effective at all times from June 13, 2014, to on or about February 1, 2015. (*Id.*).

Subsequent to termination of the Aetna contract, Valley Health has continued to provide medical services to patients with Aetna insurance coverage. Upon request by Valley Health, Aetna has authorized, either explicitly or implicitly, the treatment or continued treatment of its members. (*Id.* at 12). However, Aetna has not paid its members' full-billed charges resulting from the services rendered, which Valley Health argues Aetna is obligated to pay as an out-of-network insurance provider. (ECF No. 14 at 9).

Valley Health brought forth twelve causes of action for breach of contract, breach of implied-in-law contract, breach of implied-in-fact contract, estoppel, recovery of services rendered, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, and violations of ERISA under 29 U.S.C. §§ 1132(a)(1)(B), (a)(3). (ECF No. 28 at 1–2).

**II.     Legal Standard**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. At 1949 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 1950. Mere recitations of the elements of a cause of action, supported only by conclusory

**James C. Mahan**
**U.S. District Judge**

statements, do not suffice. *Id*. at 1949. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 1949.

Where the complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief." *Id.* (internal quotations and alterations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III. Discussion

Aetna moves to dismiss counts three, four, seven, eight, and nine of Valley Health's first amended complaint. (ECF No. 26). Counts three and four are for breach of implied-in-law contract for emergency and post-stabilization medical services. (ECF No. 14 at 17–19). Counts seven and eight of Valley Health's complaint are for recovery of services rendered and intentional interference with prospective economic advantage. (*Id.* at 26–28). Count nine is for negligent interference with prospective economic advantage. (*Id.* at 28–30).

*A) Count nine: negligent interference with prospective economic advantage claim*

The parties agree that this claim should be dismissed because it is not a recognized cause of action under Nevada law. Therefore, count nine is dismissed.

. . .

. . .

*B) Counts three, four, seven, and eight: ERISA conflict preemption*

In its motion to dismiss, Aetna argues that ERISA preempts Valley Health's claims because they "relate to" employee benefit plans covered by ERISA. *See* 29 U.S.C. §1144(a); *Ingersoll-Rand Co. v. McCleandon*, 498 U.S. 133, 138 (1990); *Aloha Airlines, Inc. v. Ahue*, 12 F.3d 1498, 1504 (9th Cir. 1993).

In the response (ECF No. 28), Valley Health argues that Congress did not intend to supplant state law, and that the "relate to" prong of ERISA conflict preemption does not apply to every state law claim that might have some impact on an ERISA plan. *See New York State Conference of Blue Cross & Blue Shield Plan v. Travelers Ins. Co.*, 514 U.S. 645 (1955).

". . . ERISA [Section 514(a)] preempts state law 'insofar as they may now or hereafter relate to any employee benefit plan.'" *Arizona State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 722 (9th Cir. 1995). "To determine whether a state law has a connection to an ERISA plan [for purposes of conflict preemption under Section 514(a)], courts should consider the objectives of ERISA and the effect of the state law on ERISA plans." *Borton v. New United Motor Mfg.*, 2010 U.S. Dist. LEXIS 85119, at *11–12 (D. Nev. August 16, 2010) (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324 (1997)).

> The Nevada District Court addressed ERISA preemption in *Borton*, holding: Congress intended ERISA to preempt state law in three areas: (1) laws that mandate employee benefit structures or their administration; (2) laws that bind employers or administrators to choices or that preclude uniform practice so that they regulate an ERISA plan; and (3) laws that provide an alternate enforcement mechanism for obtaining ERISA plan benefits.

*Id.* (quoting *Ariz. State Carpenters Pension Trust Fund*, 125 F.3d at 723).

"Courts should assume that Congress did not intend to bar state action in areas traditionally regulated by states unless that purpose is clear." *Id.* at 12. Furthermore, state law claims brought by providers, independent from any assignment of rights belonging to ERISA plan beneficiaries, are not preempted by Section 514(a). *The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1008–09 (9th Cir. 1995).

Valley Health's claims against Aetna arise under Nevada contract and tort law. Valley Health alleges Aetna is obligated to pay its members' full-billed charges for emergency and post-stabilization medical services, which amount to sums above and beyond their ERISA coverage.

James C. Mahan
U.S. District Judge

- 4 -

1  These contract and tort claims are not the types of claims which might alter the structure or administration of beneficiaries' ERISA plan coverage. *See Borton,* 2010 U.S. Dist. LEXIS 85119, at *11–12. Furthermore, the claims do not have any bearing on the uniform practice and administration of ERISA plans generally, nor do they have any impact on patients' abilities to obtain ERISA plan benefits. *See Id.*

Insofar as Valley Health is acting as Aetna members' assignees, ERISA conflict preemption is still inapposite because the reimbursements sought by Valley Health are for values that exceed the individual members' insurance coverage. In other words, Valley Health seeks to recover for services rendered based on Aetna's alleged authorization of the services, not based on the members' insurance coverage. Therefore, Valley Health's claims do not "relate to" any ERISA plan such that they would be preempted by ERISA Section 514(a).

*C) Counts three and four: implied-in-law contract*

Valley Health argues that Aetna either explicitly or implicitly authorized its members' medical services upon request by the Valley Health hospitals. (ECF No. 14 at 14–15). Valley Health asserts that Aetna implicitly authorized the services rendered in some circumstances by failing to arrange for transfer of the patients to another hospital. (*Id.* at 19). Valley Health further argues that arranging for transfer is the customary practice in the health care industry, and that doing so creates an implied-in-law contract for fair market value of the services rendered to Aetna's members. (*Id.* at 14–15, 19). Valley Health also asserts a theory of unjust enrichment as a basis for these claims, alleging that Aetna has received the benefit of having had medical services provided to its members without paying for the reasonable value of such services. (*Id.* at 17–18).

Aetna argues that Valley Health has not conferred any benefit directly upon Aetna, but instead, has conferred a benefit on the individual patients. (ECF No. 31). Aetna further alleges that Valley Health's unjust enrichment claims arise in the out-of-network context and do not allege any express or implied-in-fact provider agreements that establish a requisite level of reimbursement. (ECF No. 31 at 7). Aetna asserts that Valley Health's unjust enrichment claims fail because when Valley Health's charges exceed the members' coverage for out-of-network services, providing those services does not confer a benefit to Aetna; it confers a benefit to the patient. (*Id.* at 8).

**James C. Mahan**
**U.S. District Judge**

- 5 -

In Nevada, the elements of an unjust enrichment claim or "quasi contract" are: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances where it would be inequitable to retain the benefit without payment." *Kennedy v. Carriage Cemetery Servs.*, 727 F. Supp. 2d 925, 932 (Nev. 2010).

Valley Health has failed to identify any way in which Aetna has been enriched independently of the benefit its members received as a result of being provided with emergency medical services. While Valley Health argues that Aetna acknowledged a duty to pay for "most if not all of the services" rendered, Valley Health has not alleged that Aetna failed to reimburse Valley Health at levels commensurate with its individual members' coverage. (ECF No. 14 at 15).

Valley Health has failed to identify a situation where Aetna failed to meet its obligation to pay for medical services commensurate with its members' insurance coverage. Therefore, with respect to counts three and four, breach of implied-in-law contract for emergency services and post-stabilization services, the facts alleged do not support the necessary elements for a claim of breach of implied-in-law contract against Aetna. Accordingly, counts three and four are dismissed.

*D) Count seven: recovery of services rendered*

Valley Health alleges that Aetna requested the Valley Health hospitals perform the billed medical services on behalf of its members, and therefore became indebted to Valley Health for services rendered. (ECF No. 14 at 26). Valley Health further argues that Aetna unilaterally decided to reimburse Valley Health at rates it deemed appropriate, amounting to far less than the total billed charges. (*Id.*). Aetna argues that any billed charges for services that surpass the amount of coverage held by its members have enriched the patients, not Aetna, because Aetna is only legally obligated to pay for services commensurate with its members' coverage. (ECF No. 26 at 5).

"In order to support a right for recovery for services rendered upon a quantum meruit . . . there must be evidence tending to prove that the services were rendered under some understanding or expectation of both parties that compensation therefore was to be made." *In re Estate of Mumford*, 173 Cal. 511, 160 P. 667, 672 (Cal. 1916).

James C. Mahan
U.S. District Judge

- 6 -

Valley Health has failed to allege the rates Aetna "deemed appropriate" are of less value than the rates it is obligated to pay under its members' individual coverage plans. Even if Valley Health is entitled to receive payment for the reasonable value of the services rendered, Valley Health has not alleged that Aetna contemplated that it would pay for its members' medical services above and beyond amounts it would typically pay to out-of-network hospitals.

With respect to count seven, the facts alleged do not support the necessary elements for a claim of quantum meruit recovery for services rendered against Aetna. Therefore, count seven is dismissed.

*E) Count eight: intentional interference with prospective economic advantage claim*

Valley Health argues that Aetna purposefully interfered with its eventual reimbursement by other payors for whom Aetna administered claims. (ECF No. 14 at 28). Valley Health provides various scenarios under which Aetna allegedly committed intentional interference, including a contract directly between Valley Health and the other payors, and a "non-contractual prospective economic relationship between Valley Health and the other payors." (ECF No. 14 at 26). Valley Health argues that Aetna purposely misrepresented to the other payors the reasonable and customary rates for the services rendered, which caused the other payors to pay Valley Health less than they otherwise would have. (*Id.* at 27).

Aetna argues that Valley Health's prospective implied-in-fact contract claim is an unprecedented expansion of Nevada law. (ECF No. 31 at 9). Aetna further argues that Valley Health has not suffered any actual harm, because Valley Health has allegedly acknowledged, yet failed to pursue, other avenues of payment. (*Id.* at 10).

In Nevada, the tort of interference with a prospective economic advantage has five elements: (1) a prospective contractual relationship between plaintiff and a third party; (2) defendant must have knowledge of this prospective relationship; (3) defendant must intend to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by defendant; and, (5) actual harm to the plaintiff resulting from defendant's conduct. *Kennedy v. Carriage Cemetery Servs.*, 727 F. Supp. 2d 925, 932 (Nev. 2010). For the purpose of this type of claim, a current relationship cannot be considered a "prospective" one. *Id.*

**James C. Mahan**
**U.S. District Judge**

As Aetna correctly points out, count eight of Valley Health's complaint depends on the assertion that Aetna is not the other payor's agent because the other payors cannot interfere with their own contractual relationships. *See Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1163 (D. Nev. 2009). However, by Valley Health's own admission, Aetna is responsible for all of Valley Health's requests for reimbursement because Aetna either processed or priced all of them, regardless of whether Aetna was the insurer or administrator. (ECF No. 28 at 5).

Valley Health cannot establish a direct contractual relationship, written or implied, with the other payors. Aetna either acted as the other payors' agent by performing the pricing and processing of the claims, or the other payors could not have assented by words or conduct to specific reimbursement terms and conditions by virtue of assigning those duties to Aetna. If Aetna acted as the other payors' agent, then Aetna could not have interfered with its own contractual relationship. On the other hand, if Aetna did not act as the other payors' agent, unilaterally determining the reimbursement rates, then the other payors could not have assented to specific reimbursement rates and there is no implied-in-law contract with which Aetna could have interfered. Furthermore, these alleged contractual relationships between Valley Health and the other payors already exist, and thus they are not prospective.

Because Valley Health has not properly alleged a prospective contractual relationship between Valley Health and a third party with which Aetna could have interfered, count eight is dismissed.

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Aetna's motion to dismiss counts three, four, seven, eight, and nine (ECF No. 26), be, and the same hereby is, GRANTED, without prejudice.

DATED June 28, 2016.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 8 -